McDonald v. Montague.

TIMOTHY McDONALD v. WILLIAM S. MONTAGUE.

*Contract for the labor of an infant. Obligation of parties to a contract to labor for a specified time, in regard to lost time.*

If the father, or his agent, hire out the minor son of the former for a stipulated sum, the employer can not make a new contract with the minor which will have the effect to supersede the first one, without the assent of the party with whom the original contract was made.

And if there is a provision in the first contract that the employer may discharge the boy if he does not like him, it will not be a discharge according to the spirit of the contract, if he tell the boy he can not keep him under the first agreement, and thereupon make a new and different agreement with him, and employ him under it, without the assent or knowledge of the person with whom he made the first contract.

If one agrees to work for another for a certain number of months, and is employed under his agreement until the expiration of the stipulated period, he will not be obliged, before he can recover for his services, to make up for time which he has reasonably lost during said period; neither will the employer be obliged to pay him for the time he has lost; but he must pay him such a proportion of the stipulated price for the whole period contracted for, as the time he has actually worked bears to the whole time agreed upon.

Assumpsit for the labor of the plaintiff's minor son, in the service of the defendant. The case was referred, and the referee reported as follows:

The plaintiff, who lived in Jacksonville, sent his minor son to one Martin, in Bennington, with directions to Martin to hire him out at his discretion. Martin hired the boy to the defendant for nine months, with the agreement that the defendant should pay five dollars per month for his labor, and should school him during the three remaining months of the year. The boy remained with the defendant during the nine months, and lost nine days in that time, having in fact labored only eight months and seventeen twenty-sixths. At the expiration of the nine months the defendant refused to send the boy to school according to the contract, and the boy left his employment. After the boy had worked for the defendant a few weeks, the latter told him he could not keep him under the contract made with Martin, and made a new agreement with the boy, that he should work for him for one year for forty dollars, but

no knowledge of this new contract was communicated either to the plaintiff or to Martin. Martin did not communicate to the defendant that he was the plaintiff's agent, when he hired the boy to him. It was provided in the bargain made between Martin and the defendant, that the latter might discharge the boy if he did not like him.

The referee further reported that the defendant had paid the boy twenty-nine dollars and twenty-five cents by the plaintiff's direction which sum the referee found to be as much as the boy's labor was reasonably worth, independently of the contract with Martin.

The referee further reported that if the plaintiff was entitled to recover upon the contract made by Martin with the defendant, he found due him the sum of fourteen dollars and seventy-two cents.

The county court, at the April Term, 1857,—UNDERWOOD, J., presiding,—rendered judgment upon the report for the plaintiff for fourteen dollars and seventy-two cents and costs. Exceptions by the defendant.

*Flagg & Crosby*, for the defendant.

*Chas. N. Davenport*, for the plaintiff.

The opinion of the court was delivered by

ALDIS, J. The plaintiff sent his minor son to one Martin, in Bennington, with direction for Martin to hire him out at discretion. Martin hired the son to the defendant for nine months, at five dollars per month, and the defendant was to school the boy the three remaining months of the year. The defendant might discharge the boy if he did not like him.

It is claimed on the part of the defendant, first, that the report finds that the defendant discharged the boy, and made a new contract with him to work for one year for forty dollars; and that as the terms of this new contract were not performed by the boy, the plaintiff can not recover.

The report says, "the defendant told the boy he could not keep him under the contract with Martin, and made a new contract with the boy to work for him one year for forty dollars;" but this was not communicated either to the plaintiff or Martin.

McDonald *v.* Montague.

From these facts it is plain, first, that there was no binding force in the new contract. The son had no authority to make such, or any bargain. Authority for that purpose had been conferred upon Martin, and the fact that the defendant made the original contract with Martin, was notice to the defendant that he was not to contract with the minor. The new contract, which *wholly dispensed with the provision for the boy's schooling,* and left him to work a year at a less price than was to have been paid for the nine months service, itself illustrates the evils that would flow from inferring upon slight evidence the assent of the parent to the contracts of the minor, and thus impairing that salutary authority over the minor's acts and contracts which the law has so wisely confided in the father.

It is plain, *secondly,* that the defendant did not discharge the minor according to the spirit of the contract made with Martin. To do that he should have actually discharged him. So long as he kept him, the plaintiff and Martin must have understood he was keeping him under the original contract. To tell the boy he could not keep him under the contract with Martin, and thus obtain from him a consent to stay upon terms much less favorable, and which deprived him for the year of the means of education, (an object in the eye of a parent, as well as in reason and law, of no slight value,) and then to keep this secret from his father and Martin till the boy's service under the original contract was ended, and the time for his going to school had arrived, is a course of conduct not justified by any acts of the plaintiff seeming to authorize it, and plainly inconsistent with those obligations to both the father and the son which the defendant incurred in his agreement with Martin. It can not be regarded as either making a new contract, or discharging the old one.

The question then arises, can the plaintiff recover under the first contract?

The report of the referee says, " the boy stayed the nine months and lost during the time nine days;" " the defendant refused to send the boy to school according to the contract, and the boy quit the defendant's employment."

It is claimed by the defendant, that as the performance of the service for the whole period stated in the contract is a condition

precedent to the right of recovery, the son should have worked nine days more to make up the lost time, and that the omission to do so bars the plaintiff from recovering any part of his wages.

We are to presume that this loss of the nine days was necessary and reasonable, and had been so acquiesced in by the defendant; for the report shows nothing to the contrary, and it seems the boy continued to work for the defendant to the end of the nine months. When we say the loss of time had been acquiesced in by the defendant, we do not mean that he had acquiesced in it so that he was bound to pay for the service of the boy during such lost time; but only that he had acquiesced so that he could not say he would on account of it put an end to the contract or refuse to pay for the service.

Now we think a hiring of this kind must be construed to be for a specific and limited period of time — like the term in a lease, from such a day to such a day,— and that when the term ends, when the last day of the specific period has expired, the laborer is not bound to make up for time necessarily and reasonably lost and in the loss of which the employer has acquiesced, by continuing on in the service of the employer for a length of time equal to the time so lost. Neither is the employer bound to receive labor for such length of time as compensation for the time lost. Such a construction of the contract might work injustice, both to the employer and the laborer. Suppose a laborer is hired for one year, beginning, as is very common, with the first of March. He loses three or four weeks in haying and havesting by sickness, would it be reasonable for him to insist upon making up for the loss by continuing to work three or four weeks in March? So on the other hand, laborers, who in the spring hire out for a few months, expect their time to end about the time haying and harvesting begin, and that then they will get higher wages; how obviously unjust it would be to require them to make up for time necessarily lost in the early spring, by working an equal length of time in haying and harvesting.

We are well aware that there is a very common practice for laborers to make up in this manner for lost time; and in the exercise of that good sense and spirit of justice which usually governs the dealings of our farmers and farm laborers, such practice is

wholesome and works no wrong. But the loss of time is often regulated by special agreement, is often compensated by deduction for it on settlement, is rarely a matter of much amount, and is easily settled by agreement of the parties. We do not think that there is any such general custom of the country in making up for lost time by continuing in the service a length of time equal to the time lost, as requires that contracts for labor should be governed and regulated by it, and the custom be deemed to be incorporated as a part of the contract.

In the present case, the hiring was substantially for a year, the boy to work for nine months, and then to go to school for three months. As the time for going to school had arrived, and the defendant refused to let him go to school, the boy was justified in quitting his employment.

We think, therefore, the plaintiff is entitled to recover, and the judgment of the county court is affirmed.